# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Westland DevCo, LP,[1] | ) Case No. 10-_____ (__) |
| Debtor. | ) |

## DECLARATION OF BRUCE V. COOK IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION

I, Bruce V. Cook, hereby declare under penalty of perjury:

1. I am the Executive Vice President, Secretary and General Counsel of Westland Holdco, Inc., which is the managing general partner of Westland Devco, LP, the above-captioned debtor and debtor-in-possession (the "Debtor"). I am fully familiar with the Debtor's day-to-day operations, business affairs and records, and am duly authorized to make this Declaration on the Debtor's behalf.

## I. INTRODUCTION

2. On April 5, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). No trustee, examiner or creditors' committee has been appointed in this case. Since the Petition Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of its federal tax identification number is: Westland DevCo, LP (6647).

3. This Declaration is intended to describe the circumstances precipitating the Debtor's Chapter 11 proceeding and to provide general information about the Debtor, its business operations and financial affairs. The factual statements in this Declaration are based on my personal knowledge, information supplied to me by others under my supervision, my review of relevant documents and/or my opinions based on my experience and knowledge of the Debtor's operations and financial conditions, and are true to the best of my knowledge, information and belief.

## II. FACTUAL BACKGROUND

### A. General Overview of the Debtor's Organization and Business

4. The Debtor was formed as a limited partnership on November 15, 2006, under the laws of the State of Delaware. The limited partnership agreement was amended and restated in December 2006 (the "Amended Partnership Agreement") to admit the current limited and general partners of the Debtor. The term of the Amended Partnership Agreement is through December 31, 2056, unless terminated earlier.

5. Westland SPE GP, LLC ("SPE") and Westland HoldCo, Inc. ("Holdco") are the general partners of the Debtor and own a 0.5% and 99.5% general partnership interest in the Debtor, respectively. HoldCo is the managing general partner. The limited partners of the Debtor are D.E. Shaw Real Estate Portfolios 1, L.L.C. ("DESCO") and SCC NM Member, LLC ("SunCal"). DESCO and SunCal own a 92.5% and 7.5% limited partnership interest in the Debtor, respectively.

6. The Debtor owns and is developing approximately 55,000 acres of real property located within the City of Albuquerque, County of Bernalillo, New Mexico (the "Project"). The Project consists of three parcels of land: the Petroglyphs, Zacate and significant undeveloped land holdings. The Petroglyphs property consists of approximately 4,900 acres and

2

45895/0001-2608723v6

is partially under construction with multiple residential subdivisions, utilities and roadway infrastructure. The unimproved portion of the Petroglyphs parcel is designated for future residential development. As approved, Petroglyphs is intended to be sold as improved residential lots under "rolling lot options" to local and regional homebuilders. The Petroglyphs parcel has improved residential lots under contract and construction, proposed for near-term residential lots development with specified land use designations and contracted builder pricing. Zacate, with approximately 13,600 acres, and the Undeveloped Land, with approximately 36,200 acres, are unimproved land parcels currently not approved or designated for near-term development.

7. The Debtor plans to sell a total of 39,328 market-rate residential lots in the Project over the next 20 years, including 15,048 in the Petroglyphs sections and 24,240 in the Zacate section. The Debtor expects to sell the remaining 36,000 acres off in bulk. The Debtor has already sold and/or put under contract several hundred lots. The Debtor also plans to sell 1,005 acres of commercial land in the Petroglyphs and 2,386 acres in Zacate.

8. The magnitude of the Project is enormous and unprecedented in the area. As conceived, the Project will create, essentially, a new town within the City of Albuquerque that will include burgeoning residential, commercial and industrial areas with new schools and other amenities, such as an arts and cultural district, among others. Attracting tens of thousands of new residents to Albuquerque, and specifically to the Project itself, is essential to the Project's success. Therefore, another critical component of the Project is creating and sustaining a vibrant, large-scale economy in and around the Project that provides employment opportunities for the residents. To that end, the Debtor and its partners have forged meaningful relationships with city and state officials, retained lobbyists to secure various forms of public financing and engaged in

extensive marketing efforts to attract commitments to build from well-known international companies to the Project. Sufficient employees of the project-management company have been designated to provide services necessary for the proper operation of the Project.

9. As of December 31, 2009, according to the Debtor's unaudited financial statements, its assets had a value of approximately $360,609,008.68, including, among others, (a) land and development costs totaling approximately $352,511,243.74, (b) cash and cash equivalents totaling approximately $3,910.19, and (c) restricted cash totaling approximately $3,847,097.85. As of December 31, 2009, according to the Debtor's unaudited financial statements and as set forth in detail below, the Debtor's liabilities totaled $197,575,948.23. For the year-ending December 31, 2009, the Debtor realized a net loss from operations of approximately $2,541,848.52.

## B. The Debtor's Pre-Petition Secured Debt

10. On or about December 7, 2006 (the "Loan Closing Date"), Barclays Capital Real Estate, Inc. ("Barclays") loaned the Debtor's predecessor-in-interest, Westland Development Co., Inc. ("Westland"), the sum of $212,320,000.00 (the "Loan") pursuant to a Loan Agreement, as amended (the "Loan Agreement"). To evidence its obligations to repay the Loan, Westland signed and delivered to Barclays a Promissory Note A in the original principal amount of $135,320,000.00 ("Note A") and a Promissory Note B in the original principal amount of $77,000,000.00 ("Note B"). Westland pledged the Project and miscellaneous other personal property to Barclays as security for the Loan. On that same date, Westland assigned the Project and all of its obligations with respect to the Loan to the Debtor.

11. On or about May 15, 2007, Note A was separated into Amended and Restated Promissory Note A-1 in the principal amount of $85,320,000.00 made payable to Barclays, and Promissory Note A-2 in the principal amount of $50,000,000.00 made payable to

4

Five Mile Capital SPE B LLC ("Five Mile"). Additionally, on December 7, 2006, Barclays transferred Note B to iStar Bank ("iStar" and, together with Barclays and Five Mile, collectively referred to as the "Lenders.") Barclays also is the agent for the Lenders. The Loan was scheduled to mature on June 7, 2008.

12. On or about July 16, 2008, the Loan Agreement was amended (the "Amended Loan Agreement") to, among other things, extend the maturity date of the Loan to July 9, 2009.[2] In connection with the Amended Loan Agreement, the Lenders executed an Amended and Restated Intercreditor Agreement (the "Intercreditor Agreement"), pursuant to which the priorities of the Notes were established as follows: Note A-1 is in senior position, Note A-2 has second priority and Note B has third priority.

13. As of the Petition Date, approximately $181,775,168.03 remains outstanding on the principal of the Loan.

### C. The Debtor's Other Significant Pre-Petition Debt

14. In addition to the Debtor's secured indebtedness, as of the Petition Date, the Debtor had unsecured debt in the approximate amount of $4,671,984.77.

### III. FACTORS PRECIPITATING THE DEBTOR'S CHAPTER 11 FILING

15. As noted above, the extended Maturity Date of the Loan was July 16, 2009. Since the extended Maturity Date and up through the Petition Date, the Debtor and the Lenders have engaged in extensive discussions concerning potential restructuring options. Those discussions, however, have been complicated by the complex nature of the Intercreditor Agreement, which requires an elaborate appraisal process to determine which Lender has the

---

[2] By agreement dated July 13, 2009, the Maturity Date was further extended to July 16, 2009.

5

authority to direct Barclays, as agent, to negotiate or pursue litigation. The Debtor was hopeful that a restructuring deal could be accomplished to avoid the bankruptcy filing, but was unable to reach one.

16. Despite the maturity of the Loan, since July 2009, the Debtor has taken numerous steps, and expended substantial resources, to preserve and enhance the value of the Project. Those steps include, but are not limited to, the following:

(a) Paid real estate taxes totaling approximately $217,000.00 in a timely manner;

(b) Pursued federal stimulus money under the American Recovery and Reinvestment Act and economic development opportunities at the city and state levels;

(c) Secured a memorandum of understanding with a national laboratory to utilize the Project as a "demonstration development" for the testing of renewable and water treatment, which may lead to federal funding through the U.S. Departments of Education and Defense;

(d) Spent more than $134,000.00 on water and renewable energy development;

(e) Spent more than $58,000.00 to explore the possibility of obtaining funding for broadband services;

(f) Spent in excess of $110,000.00 to develop and refine, in conjunction with a team of land planners, infrastructure engineers, and environmental and marketing consultants, a long-range plan for the development of the Project;

(g) Fielded offers and communicated with potential purchasers and homebuilders for development and sale of existing lots;

(h) Assisted the Bernalillo County Public Works Department with development of the Upper Petroglyphs Water System;

(i) Worked with the U.S. Department of Transportation and Albuquerque Flood Control Authority on the new Interstate I-40 exchange, Double Eagle II Roadway, and related trunk drainage facilities;

(j) Requested and received extensions from the City of Albuquerque for subdivisions of Watershed, Stormcloud, and Sundoro South; and

(k) Requested lender approval for the filing of a plat that was a condition for approval of a special-use permit for a 247-acre solar farm.

17. On December 15, 2009, Barclays, on behalf of itself and as agent for the Lenders, filed a complaint against the Debtor and other parties in New Mexico State Court, Second Judicial District (the "Complaint") seeking, among other things, to foreclose its mortgage on the Project. On January 28, 2010, the Debtor filed an Answer to the Complaint.

18. On February 19, 2010, Barclays filed a Motion for the Appointment of a Receiver and for Injunctive Relief (the "Receiver Motion"). Also on February 19, 2010, Barclays filed a motion for partial summary judgment on counts 1 through 3 of the Complaint (the "Partial Summary Judgment Motion").

19. On March 9, 2010, the Debtor filed its opposition to the Receiver Motion and Partial Summary Judgment Motion. The return date of both motions was set for April 5, 2010.

20. In order to avoid the expense, distraction and uncertainty of litigation and, more importantly, to efficiently and effectively restructure the outstanding indebtedness and maximize value for all stakeholders, the Debtor filed a Chapter 11 petition.

## IV. PURPOSE OF CHAPTER 11 CASE

21. Before the bankruptcy filing, the Debtor thoroughly analyzed all of its available options and determined that filing for Chapter 11 was necessary to preserve the value its business as a going concern and assets for the benefit of all stakeholders and to explore all possible alternatives for restructuring the Loan in a challenging real estate market.

22. During the Chapter 11 proceeding, all administrative expenses incurred by the Debtor and all expenses associated with the Project will be paid from an equity contribution from DESCO as reflected in the budget attached as **Exhibit A**. Therefore, the value of the Project during the Debtor's bankruptcy case will be maintained and preserved, and the Debtor will not be saddled with administrative claims it cannot satisfy.

## V. CONCLUSION

23. In sum, the Debtor believes that this Chapter 11 case will enable it to stabilize its business operations, which have been strained as a result of the Debtor's inability to restructure its indebtedness to the Lenders, while it seeks all possible alternatives to reorganize its financial affairs for the benefit of its estate and creditors.

_____
BRUCE V. COOK

Subscribed and sworn to before me
this 5th day of April, 2010.

_____

9

45895/0001-2608723v6

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____  _____
Signature of Document Signer No. 1                Signature of Document Signer No. 2 (if any)

State of California

County of ORANGE

Subscribed and sworn to (or affirmed) before me on this

__5__ day of __APRIL__, 20 __10__, by
Date        Month                    Year

(1) _____BRUCE V COOK_____,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me (.)(,)

(and

(2) _____,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me.)

Signature _Kimberly M Schreutelkamp_
Signature of Notary Public

KIMBERLY M. SCHREUTELKAMP
Commission # 1786052
Notary Public - California
Orange County
My Comm. Expires Dec 20, 2011

Place Notary Seal Above

--- OPTIONAL ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT OF SIGNER #2
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827